MARC S. SCHECHTER (State Bar No. 116190)
SUSAN L. METER (State Bar No. 236133)
ELIZABETH M. SALES (State Bar No. 250992)
Butterfield Schechter◆LLP
10616 Scripps Summit Court, Suite 200
San Diego, CA 92131
Telephone: (858) 444-2300

Attorneys for Plaintiffs/Counterdefendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TJRK, INC., a California corporation; JOSEPH CHRISTENSON, an individual; and PATRICIA CHRISTENSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT WAAGE, an individual; THE WAAGE LAW FIRM, a California professional corporation; JERRY WAAGE, an individual; PROVERBIAL INVESTMENTS, INC., an Iowa corporation; ROBERT JENSEN, an individual; INDIANAPOLIS LIFE INSURANCE COMPANY, an AMERUS COMPANY, nka AVIVA USA CORPORATION, an Iowa corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 08-CV-1140 JM RBB<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS SCOTT WAAGE, THE WAAGE LAW FIRM, AND ROBERT JENSEN'S MOTION TO DISMISS PORTIONS OF THE COMPLAINT<br><br>Date:         September 19, 2008<br>Time:        1:30 p.m.<br>Courtroom: 16<br>Judge:       Jeffrey T. Miller |

**I.**

**INTRODUCTION**

Defendants Scott Waage, The Waage Law Firm, and Robert Jensen ("Waage Defendants") moved this Court to dismiss portions of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). The grounds upon which the Waage Defendants based their motion to dismiss, as set forth below, are without merit and must be denied.

## II.

## LEGAL STANDARD

On a motion to dismiss, the court is required to read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990); *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). A Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Schwarzer, Tashima & Wagstaffe, California Practice Guide, Federal Civil Procedure Before Trial (The Rutter Group 2006), § 9:210, p. 9-59. In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as *reasonable inferences* to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1988). "The court looks not at whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1293 (S.D. Cal. 2003).

A court may only dismiss a complaint without granting leave to amend if it appears with certainty that plaintiffs cannot state a claim and any amendment would be futile. Fed. R. Civ. P. 15(a). See also *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to amend should be granted unless the court determined that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency").

## III.

## PLAINTIFFS' FIFTH CAUSE OF ACTION STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The facts, as listed in Paragraphs 21 through 32 of the Complaint, are incorporated by reference into the Fifth Cause of Action and establish the requisite allegations to state a claim for relief for fraud. The facts have been pled with particularity as required by Fed. R. Civ. P. 9(b) and, therefore, Plaintiffs have stated a claim for relief for fraud and Defendants' Motion to Dismiss must be denied.

/././

### A. Plaintiffs' Allegations Establish Actionable Fraud

The factual allegations of a complaint in federal court need only comply with the minimal pleading requirements of Fed. R. Civ. P. 8(a), except when alleging a claim for fraud. Fraud claims are required to be pled pursuant to the requirements of Fed. R. Civ. P. 9(b). The purpose of the specific allegations of fraud are to give "defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). The complaint must state the "time, place, persons, statements made, and explanation of why or how such statements are false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n. 7 (9th cir. 1994).

Plaintiffs' Complaint sets forth facts in paragraphs 22-32, which are incorporated by reference in the Fifth Cause of Action. Plaintiffs allege that they met with Scott Waage in 2001 by way of appointment, and that Scott Waage made specific statements to Joseph Christenson that Plaintiffs now understand were untrue statements. See Complaint at ¶¶ 22-32. Plaintiffs further allege in the Fifth Cause of Action that Defendants, including the Waage Defendants, misrepresented and concealed the risks involved, the true tax benefits, and the consequences of the transaction, and that they did so to induce Plaintiffs to become involved in the tax scheme. Complaint ¶111(a)-(d).

Defendants' Motion to Dismiss proposes that only an action for malpractice lies here because an attorney's duty is to provide accurate and complete information which is governed by the attorney standard of care. However, in this case, it went beyond just failure to meet the standard of care. Here, Scott Waage knew that the statements he was making were false, but continued to make these statements in order to induce Plaintiffs into the tax scheme, from which the Waage Defendants received over $107,000 in fees. The Motion to Dismiss states that the claim "lacks even the most fundamental markings of fraud, like the making of a statement that the party knows to be false, with intent to induce reliance." Points & Authorities at 4:5-6. Defendants apparently have not read the Complaint in its entirety. Plaintiffs specifically allege:

> Upon information and belief, Defendants <u>knew</u> of the potential adverse tax consequences of the Irrevocable Trust/DBPP Structure and 419(e) Plan and <u>not only failed to tell Plaintiffs, but affirmatively reassured Plaintiffs at all times that the</u>

BUTTERFIELD
SCHECHTER
♦ LLP

- 3 -

00143828.WPD

OPPOSITION TO MOTION TO DISMISS
Case No. 08-CV-1140 JM RBB

> <u>contributions would be income tax deductible</u>, that there were no tax risks, and that there would be no current tax liability arising to TJRK, J. CHRISTENSON or P. CHRISTENSON.

Complaint at ¶114 (emphasis added).

> Defendants misrepresented and concealed the risks associated with the use of an Irrevocable Trust as sole shareholder of the Plan Sponsoring entity to avoid the coverage requirements of the DBPP under IRC § 414. Defendants further misrepresented and concealed the true qualifications of what the 419(e) Plan would be, its tax benefits, the value of the Policies that would be obtained thereunder, employer tax risks thereunder, the consequences and risks of the 419(e) Plan, and the availability of borrowing on a tax-free basis thereunder at any time, and specifically did so to <u>induce</u> high income earners such as J. CHRISTENSON to create TJRK and cause the business to create the Irrevocable Trust, adopt the DBPP, and adopt the 419(e) Plan and participate in Defendant S. WAAGE, INDIANAPOLIS LIFE, J. WAAGE, PROVERBIAL INVESTMENTS and WAAGE FIRM's tax avoidance scheme. Plaintiffs relied on the representations and did not know of the concealed information which, had it been disclosed, would have notified Plaintiffs of serious risks and concerns about the structure of said scheme.

Complaint at ¶111(a) (emphasis added). Defendants are wrong – Plaintiffs have alleged the requisite statements for a fraud claim.

Defendants further argue that statements about future events are not actionable as fraud. Again, that is not the case here. The simple fact that the IRS ultimately audited Plaintiffs and disallowed the transaction as an abusive tax scheme does not mean that it was not an abusive tax scheme at the time Defendant Scott Waage told Plaintiffs that it was legitimate. Defendants knew of the risks involved in the transaction but misrepresented and concealed these risks to induce Plaintiffs to retain their services and to enter into a transaction that was an illegal tax avoidance scheme.

Defendants spend a lot of time arguing the merits of the fraud claim; however, whether the claim amounts to fraud is not the purpose of a 12(b)(6) motion to dismiss. On a motion to dismiss, the issue is whether Plaintiffs have alleged sufficient facts to state a claim upon which relief can be granted. Plaintiffs have fulfilled that duty by their allegations of specific facts as to time, place, statements, and by whom such statements were made in paragraphs 21-32, and further allegations of how such statements were wrong or misleading as alleged in paragraphs 111-112; therefore, dismissal is unwarranted and Defendants' Motion to Dismiss must be denied.

/././

BUTTERFIELD
SCHECHTER
♦ LLP

- 4 -

00143828.WPD

OPPOSITION TO MOTION TO DISMISS
Case No. 08-CV-1140 JM RBB

### B. Plaintiffs' Complaint Pleads Fraud with the Requisite Specificity

Defendants allege that Plaintiffs have failed to state facts sufficient to constitute a claim for fraud. Defendants have pulled out statements from the Fifth Cause of Action without taking into consideration the incorporated facts set forth in paragraphs 21 through 32 of the Complaint. These alleged facts set forth the time, place, persons, and statements made sufficient to constitute a claim for fraud. Specifically, Plaintiffs allege:

> 21. J. CHRISTENSON is the owner of three companies, TJRK, Remodel Works Bath & Kitchen, Inc. ("Remodel Works"), and Plumbing Plus, Inc. ("Plumbing Plus"). In 2001, Remodel Works had approximately 35 employees and Plumbing Plus had approximately 8 employees. In 2001, while Remodel Works and Plumbing Plus were having a financially successful year, J. CHRISTENSON received what he later found out was a spam e-mail for a seminar being promoted by S. WAAGE and/or the WAAGE FIRM regarding tax strategies for business owners. Thinking that the e-mail was from a friend, "Tom," J. CHRISTENSON read the e-mail and became interested in the seminar. J. CHRISTENSON decided to attend the seminar to learn more about the tax strategies that S. WAAGE and WAAGE FIRM were promoting. After the seminar, J. CHRISTENSON was interested in further pursuing advice from S. WAAGE and WAAGE FIRM regarding the amount of tax liability he and his companies were facing for the 2001 year and to see if there was any way to legitimately defer tax on some of the year's profits.
>
> 22. J. CHRISTENSON called and made an appointment with S. WAAGE. During their first meeting, S. WAAGE discussed setting up a new company, TJRK, the stock of which would be owned by an irrevocable trust. TJRK would then sponsor a pension plan, a defined benefit plan. S. WAAGE advised J. CHRISTENSON that the contributions to the defined benefit plan would be 100 percent income tax deductible to TJRK.
>
> 23. In advising J. CHRISTENSON, S. WAAGE claimed that the coverage requirements typically demanded of a qualified retirement plan where entities are in an affiliated services or controlled group arrangement were not applicable because TJRK would be owned by the irrevocable trust, which was not owned by an individual over which J. CHRISTENSON had control, nor was it a legal entity in which J. CHRISTENSON had an ownership interest.
>
> 24. Based on S. WAAGE's advice and representations, J. CHRISTENSON agreed to set up TJRK, the JMC Irrevocable Trust dated December 31, 2001 (the "Irrevocable Trust"), and the DBPP effective as of December 17, 2001.
>
> 25. TJRK contributed approximately $250,000 to the DBPP for the first plan year, and J. CHRISTENSON rolled over approximately $400,000 from his personal IRA into the DBPP.
>
> 26. In 2003, realizing that J. CHRISTENSON's businesses were having another financially successful year, S. WAAGE began advising J. CHRISTENSON of his need to establish a 419(e) welfare benefit plan. S. WAAGE advised J. CHRISTENSON that TJRK could establish a single employer welfare benefit plan

/././

that would be funded with life insurance policies on the lives of J. CHRISTENSON and P. CHRISTENSON.

27. S. WAAGE, J. WAAGE, and INDIANAPOLIS LIFE are partners working in concert to promote single employer welfare benefit plans purportedly qualified under IRC § 419(e) to high net worth companies. Defendants claim that the company plan sponsor can take high income tax deductions for the amounts that are contributed to the plan, making the program look particularly attractive to high net worth company owners. Defendants cooperated and conspired to market and sell the 419(e) Plan to Plaintiffs.

28. Part of the 419(e) Plan proposal from S. WAAGE was that the 419(e) Plan would be funded using insurance purchased through his brother, J. WAAGE, PROVERBIAL INVESTMENTS, and INDIANAPOLIS LIFE. During the discussions with S. WAAGE, J. CHRISTENSON asked whether he could use his own broker and a different insurance company. S. WAAGE told him that they could not do the 419(e) Plan if they used another broker or insurance company because "he couldn't guarantee the structure would work if he didn't use his brother."

29. Based on S. WAAGE's advice, the 419(e) Plan was created effective as of January 1, 2003, and was funded through J. WAAGE and PROVERBIAL INVESTMENTS, with INDIANAPOLIS LIFE insurance policies (the "Policies").

30. TJRK contributed approximately $250,000, which was used for the initial premium payments on the insurance Policies for J. CHRISTENSON and P. CHRISTENSON.

31. In addition to the advice about the DBPP and the 419(e) Plan, S. WAAGE and the WAAGE FIRM also advised J. CHRISTENSON and P. CHRISTENSON that they could rent out a portion of their home to TJRK as its office and further advised that TJRK could take a tax deduction for the rental payments. Based on S. WAAGE and the WAAGE FIRM's advice, J. CHRISTENSON and P. CHRISTENSON, as Landlord, entered into a Lease Agreement with TJRK dated December 17, 2001 ("Lease"). The Lease Agreement provided that Tenant, TJRK, would be responsible for all of the utilities and would be responsible to maintain the property and conduct all repairs. S. WAAGE and the WAAGE FIRM advised that these expenses were a tax deduction to TJRK, and based on S. WAAGE and the WAAGE FIRM's advice, TJRK took these expenses as deductions on its tax returns.

32. On September 22, 2006, TJRK received a notice of audit from the Internal Revenue Service. As a result of the audits, the IRS has indicated that they are disqualifying the DBPP for failure to include the employees of Remodel Works and Plumbing Plus and the 419(e) Plan and disallowing the tax deductions taken thereunder, and an assessment of the taxes, penalties, and interest thereon is imminent. In addition all deductions taken for the Lease arrangement were disallowed.

Complaint ¶¶ 21-32.

As correctly pointed out by Defendants, "the factual allegations must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charges so that they can defend against the charge and not just deny that they have done anything wrong."

1  P-A 5:12-17, quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52
2  (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Plaintiffs have
3  specifically alleged the conduct in question, as quoted above from paragraphs 21 through 32 of the
4  Complaint.  These facts set forth the statements made, by whom they were made, the time frame
5  when they were made, sufficient enough so that the Waage Defendants can defend against these
6  claims. The facts set forth in Defendants' points and authorities neglect to include the facts from
7  paragraphs 21 through 32, and misconstrues the Complaint in an attempt to convince the Court that
8  Plaintiffs have not alleged specific statements made, time frame, or by whom such statements were
9  made. Defendants are again wrong and their Motion to Dismiss must be denied.

10  In the event the Court concludes that Plaintiffs' Complaint is insufficient to establish a claim
11  for fraud, Plaintiffs request leave to amend the Complaint to allege facts sufficient to establish such
12  claim.

### IV.

### TREBLE DAMAGES

15  Plaintiffs do not oppose the request to strike paragraph 162 of the Complaint and the treble
16  damages portion of paragraph 9 of the Prayer for Relief. Plaintiffs do request that the Court only
17  strike the request for treble damages portion of paragraph 9 of the Prayer for Relief and not the entire
18  paragraph, as the first part of the paragraph requests restitution of the amount of premiums paid,
19  which is a permissible remedy thereunder. Plaintiffs, therefore, request that paragraph 9 be revised
20  to plead as follows: "9.  For restitution of the amount of premiums paid into the Policies."

### V.

### EMOTIONAL DISTRESS

23  Plaintiffs also do not oppose striking the portions of paragraphs 133 and 143 of the
24  Complaint and paragraph 8 of the Prayer for Relief that request emotional distress damages for the
25  Professional Malpractice/Negligence Causes of Action. Plaintiffs, therefore, request that paragraph
26  8 of the Prayer for Relief be revised as follows: "8. General damages to J. CHRISTENSON and P.
27  CHRISTENSON for mental and emotional distress and other incidental damages in a sum to be
28  determined at the time of trial."

BUTTERFIELD
SCHECHTER
♦ LLP

## VI.

## PUNITIVE DAMAGES ARE RECOVERABLE BECAUSE PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO CONSTITUTE A CAUSE OF ACTION FOR FRAUD

Defendants' arguments in support of their motion to strike the punitive damages claims are based solely on their allegations that Plaintiffs have not pled fraud with particularity. If the Court agrees that Plaintiffs' Complaint is to show a claim of fraud, as argued above, or if the Court grants leave to amend the allegations of the Complaint for the fraud cause of action, then Defendants' motion to strike the punitive damages must be denied.

## VII.

## CONCLUSION

Based on the arguments set forth herein, Plaintiffs request that the Court deny Defendants' Motion to Dismiss the Fifth Cause of Action and that the Court deny Defendants' request to strike Plaintiffs' claims for punitive damages.

Dated: September 5, 2008            BUTTERFIELD SCHECHTER◆LLP

By: s/ Susan L. Meter
SUSAN L. METER
smeter@bsllp.com
Attorneys for Counterdefendant

# CERTIFICATE OF SERVICE

I, Susan L. Meter, hereby declare:

On September 5, 2008, I caused the following document to be electronically served:

- PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS SCOTT WAAGE, THE WAAGE LAW FIRM, AND ROBERT JENSEN'S MOTION TO DISMISS PORTIONS OF THE COMPLAINT

on the interested parties who have agreed to accept e-filing as effective service in this action by filing this through the CM/ECF system to the following e-mail addresses:

ghensrude@klinedinstlaw.com

garchie@lbbslaw.com

mhornak@rutan.com

who are the attorneys for Defendants in this matter.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 5, 2008, at San Diego, California.

Date: September 5, 2008       s/ Susan L. Meter
                              SUSAN L. METER

BUTTERFIELD
SCHECHTER
♦ LLP

- 1 -
CERTIFICATE OF SERVICE
00143828.WPD   Case No. 08-CV-1140 JM RBB